# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DEREK DAVIS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 10-1761 (RMC)** |
| **WORLD SAVINGS BANK, FSB, n/k/a** | ) | |
| **WACHOVIA MORTGAGE, FSB,** *et al.,* | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Derrick Davis purchased a home with a mortgage loan from World Savings Bank FSB; the loan is allegedly now held by Wachovia Corporation and Wells Fargo Bank, N.A., (collectively the "Defendants").[1] Mr. Davis defaulted on payment of the mortgage, and then brought suit against Defendants asserting claims under District of Columbia common law: breach of contract/breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, and negligent misrepresentation. Defendants move to dismiss on various grounds, including preemption under the Homeowners' Loan Act ("HOLA"), 12 U.S.C. § 1464. As explained below, the Complaint will be dismissed.[2]

---

[1] World Savings Bank, FSB, is now known as Wachovia Mortgage, FSB.

[2] The Complaint alleges that Wachovia Corporation and Wells Fargo Bank, N.A., are successors to World Savings Bank by merger, but the actual corporate relationship among Defendants is unclear. Because the Court dismisses the claim based on preemption and failure to state a claim, it is not necessary to sort out the relationships among the Defendants or to determine whether each Defendant could be liable on the claims alleged.

# I. FACTS

Mr. Davis borrowed $280,000 from World Savings Bank FSB ("World Savings Bank") in December 2007 pursuant to a fixed-rate mortgage note and a "Pick-a-Payment" mortgage loan. Notice of Removal [Dkt. #1], Ex. 1 ("Compl."), Ex. A ("Note"). The Pick-a-Payment loan provided for various payment options, including a minimum payment, an interest-only payment, a payment based on a 30-year amortization, or a payment based on a 15-year amortization. Compl. at 1 (Preliminary Statement). Mr. Davis chose the minimum payment option, which was fixed at the amount of $1,273.01 per month for an initial term of one year, after which the monthly payment was subject to change. The Note provided:

> 1. Borrower's Promise to Pay
> In return for a loan that I have received, I promise to pay US $280,000.00, called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender. The Lender is World Savings Bank, FSB, a Federal Savings Bank, its successors and/or assignees, or anyone to whom this Note is transferred.
> . . .
>
> 3. Payments
> (A) Time and Place of Payments
> I will pay Principal and interest by making payments every month.
> I will make my monthly payments on the 1st day of each month beginning on February 1, 2008. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on January 1, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." . . .
>
> (B) Amount of My Initial Monthly Payments
> Each of my initial monthly payments will be in the amount of US $1,273.01. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by the Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal Balance.

(C) Payment Change Dates

My monthly payment will change as required by Section 3(D) below beginning on the 1st day of February, 2009 and on that day every 12th month thereafter until the 121st month, which will be the final payment change.  Each of these dates is called a "Payment Change Date."  My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.  I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

(D) Calculation of Payment Changes

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance together with interest, including  any deferred interest as described in Section 3(E) below, by the Maturity Date.  However, the amount by which my payment can be increased will not be more than 7 ½ % of the then existing Principal and interest payment.  This 7 ½ % limitation is called the "Payment Cap."  The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

(E) Deferred Interest; Additions to My Unpaid Principal

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due.  If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

(F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap."  If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment.  Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date together with interest, in substantially equal payments.

(G) Final Payment Change

On the 10th Payment Change Date my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply.

Note §§ 1, 3(A)-(G).  In sum, when the minimum payment was sufficient to pay only a portion of

the interest due on the loan, the Note provided that the unpaid portion of the interest, called "Deferred Interest," would be added to the principal balance and would, in turn, accrue interest. *Id*. § 3(E). So that the Note would still be paid in full by its maturity date, the minimum payment was subject to periodic increases. *Id*. § 3(D), (F), (G).

Mr. Davis alleges that although his loan carried a fixed interest rate of 8.8%, *see id*. § 2, by opting for the minimum payment Mr. Davis was effectively charged a much higher interest rate. Compl. ¶ 15. "Plaintiff was promised . . . a fixed rate note. In fact[,] Plaintiff's note states on its face that the note in which Plaintiff received was a fixed rate note. However, Plaintiff never received a fixed rate note [because the note] is really an adjustable rate note with a negative amortization component hidden within." *Id*. ¶ 23. Mr. Davis also claims that, at least during the initial minimum payment period, the Note was negatively amortized. *Id*. ¶ 13. Despite the plain language of the Note, Mr. Davis contends that Defendants failed to provide sufficient disclosures to him regarding the nature of the loan, the risk of negative amortization, and the fact that the minimum payment did not cover the full amount of interest due or the full cost of the loan. *See, e.g.*, Compl. ¶¶ 13-14, 16-17. Also, he complains that Defendants failed to inform him that if his balance increased to a certain level, he could no longer select the minimum payment option. *Id*. ¶ 18. As a result, Mr. Davis brought suit, alleging breach of contract/breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, and negligent misrepresentation. *See* Compl. ¶¶ 25-60 (Counts I-IV). Defendants move to dismiss.[3]

---

[3] Mr. Davis also brought suit against Defendants in D.C. Superior Court on two loans that are not at issue here. *See Davis v. World Savings Bank, FSB*, No. 2010 CA 007432 B (D.C. Superior Ct.). Mr. Davis asserted claims similar to those alleged here, and the court dismissed the case based

## II. LEGAL STANDARDS

### A.  Jurisdiction

Although Mr. Davis initially filed this case in D.C. Superior Court, Defendants removed the case to this Court on the basis of diversity jurisdiction.  Federal courts have diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).  A court lacks diversity jurisdiction if there are litigants from the same state on opposing sides of the controversy.  *See Prakash v. Am. Univ.*, 727 F.2d 1174, 1178 n.25 (D.C. Cir. 1984).  A corporation is deemed to be a citizen of the state in which it is incorporated *and* the state where it maintains its principal place of business.  28 U.S.C. § 1332(c)(1).  The principal place of business for a corporation is usually its headquarters, where day-to-day business is conducted.  *Masterson-Cook v. Criss Bros. Iron Works, Inc.*, 722 F. Supp. 810, 812 (D.D.C. 1989).

Here, Mr. Davis is a citizen of the State of Maryland.  World Savings Bank, Wachovia Corporation, and Wells Fargo are all federally chartered and their principal places of business are Texas, North Carolina, and South Dakota, respectively.  As the Complaint seeks to rescind a loan or prevent foreclosure, *see* Compl. at 17 (Prayer for Relief), the amount in controversy is the loan amount, *i.e.*, over $280,000.  *See* Order Denying Mot. to Remand [Dkt. # 12] at 2.  The diversity of citizenship and jurisdictional amount requirements are met, and diversity jurisdiction applies.

---

on HOLA preemption and failure to state a claim.  *See* Defs.' Notice of Subsequent Authority [Dkt. # 18].

**B. Motion to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id.*, 550 U.S. at 570.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id.*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding a motion under Rule 12(b)(6), a court considers the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Further, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## III. ANALYSIS

### A. Preemption Under the Homeowners' Loan Act

Defendants assert that all of the claims set forth in the Complaint are preempted by

HOLA. There are three ways that federal law can preempt state law. First, Congress may preempt state law by expressly stating that preemption applies. *Jones v. Rath Packing Co*., 430 U.S. 519, 525 (1977); *Bank of Am. v. City and County of S.F.*, 309 F.3d 551, 558 (9th Cir. 2001). Second, "field preemption" applies when federal regulation is so pervasive that it is reasonable to infer that Congress left no room for the states to supplement an area of law. *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947); *Bank of Am.*, 309 F.3d at 558. Third, preemption may apply when state law conflicts with federal law such that compliance with both laws is impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or when application of state law would impede Congress's purposes and objectives, *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Bank of Am.*, 309 F.3d at 558.

HOLA empowered the Office of Thrift Supervision ("OTS") to supervise and regulate federal savings associations and federal savings banks. 12 U.S.C. § 1464; *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161-62 (1982). In order to ensure that the public had access to home financing and to ensure the solvency of federal savings associations, OTS regulated federal savings associations through a uniform set of regulations that occupied the entire field of lending regulation pursuant to 12 C.F.R. § 560.2(a). Section 560.2(a) provided:

> (a) Occupation of field.
> Pursuant to 4(a) and 5(a) of the HOLA, 12 U.S.C. § 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with

best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplications and burden), *OTS hereby occupies the entire field of lending regulation for federal savings associations.* OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or 560.110 of this part.[4] For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

*Id*. (emphasis added).[5] While ordinarily there is a presumption against preemption over state police powers, this presumption does not apply when there has been a history of significant federal presence, such as in the area of national banking. *United States v. Locke*, 529 U.S. 89, 108-20

---

[4] 12 C.F.R. § 560.110 is not relevant here. It provided that a federal savings association may charge interest at the maximum rate permitted to any state-chartered lending institution under the laws of that state.

[5] On July 21, 2011, OTS was transferred to the Office of the Comptroller of the Currency pursuant to a new statute, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, P.L. 111-203, 124 Stat. 2017 ("Dodd-Frank Act"). *See* 12 U.S.C. § 5412. Effective 90 days after the transfer date, the OTS will be abolished. *Id*. § 5413. The Dodd-Frank Act provides that HOLA does not occupy the field in any area of state law and that preemption is governed by the standards applicable to national banks. *Id*. § 1465(a), (b); *see Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996) (conflict preemption applies to national banks). The OCC has issued an Interim Final Rule that changes the preemption regulations. *See* 76 Fed. Reg. 48950 (Aug. 9, 2011) (§ 150.136 sets forth a new preemption regulation, superseding 12 C.F.R. § 560.2)). The new regulation, however, does not govern this case because regulations, like statutes, cannot be applied retroactively absent express direction from Congress. *Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *see also Nat'l Min. Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002). Congress did not direct retroactive application of the new regulation, and the Dodd-Frank Act provided that section 1465 of Title 12 was enacted and amended effective on the transfer date, *i.e*. July 21, 2011. *See* P.L. 111-203, 124 Stat. 2017, §§ 1046, 1047(b), 1048. Section 560.2 governs here because it was the regulation in effect when the parties entered into the Pick-a-Payment mortgage loan transaction.

(2000); *Bank of Am.*, 309 F.3d at 559. "That is, in the absence of the presumption *against* preemption, full field preemption effectively gives the court a presumption *of* preemption." *Aguayo v. U.S. Bank*, Civ. No. 09-56679, 2011 WL 3250465, *6 (9th Cir. Aug. 1, 2011).

Section 560.2(b) provided thirteen examples of the types of state laws that were preempted, including the following:

> (b) Illustrative examples.
> [T]he types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:
>
> . . .
>
> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> (11) Disbursements and repayments . . . .

12 C.F.R. § 560.2(b).

Section 560.2 also provided examples of state laws that are not preempted:

(c) State laws that are not preempted.

State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law;

. . .

(4) Tort law;

. . .

(6) Any other law that OTS, upon review, finds:

        (i) Furthers a vital state interest; and

        (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

*Id*. § 560.2(c).

OTS outlined the steps it would take to analyze whether a state law is preempted:

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. 50951-01 (Sept. 30, 1996).

While the D.C. Circuit has not addressed the issue of preemption under HOLA, three other circuits have. The Eighth and Ninth Circuits have applied § 560.2 to find broad preemption;

-10-

in contrast, the Seventh Circuit has read § 560.2 quite narrowly.  *Compare Casey v. FDIC*, 583 F.3d 586 (8th Cir. 2009) (finding claims under Missouri Merchandising Practices Act preempted by HOLA) and *Silvas v. E*Trade Mort. Corp.*, 514 F.3d 1001 (9th Cir. 2008) (finding claims under California Unfair Competition Law  preempted by HOLA) *with In re Ocwen Loan Servicing, LLC, Mort. Servicing Litig.*, 491 F.3d 638 (7th Cir. 2007) (finding common law claims generally are not preempted).  In arguing for preemption, Defendants rely on *Silvas*.  In arguing against it, Mr. Davis relies on *Ocwen*.

In *Silvas*, the Ninth Circuit determined that claims under the California Unfair Competition Law ("UCL") were preempted by HOLA.  There, mortgage applicants brought suit alleging that E*Trade Mortgage Corporation violated the UCL's unfair advertising and unfair competition rules (1) by including false information in its website and in its advertising and (2) by misrepresenting consumer legal rights in its advertising and other documents. 514 F.3d at 1003. The Ninth Circuit held that the claims were preempted under § 560.2(b)(9), which preempts state laws claims regarding disclosure and advertising. *Id*. at 1006.  The mortgage applicants also claimed that E*Trade violated the UCL's unfair competition provision by charging an interest rate lock-in fee that was not refunded when loan applicants cancelled their loan transactions.  The Ninth Circuit found that under § 560.2(b)(5), state laws that purport to impose requirements on loan fees are preempted. *Id*.  Because the UCL was the type of state law that was contemplated under § 560.2(a) and (b), the court ended its analysis, explaining that there was no need to address whether the UCL was a state

law with only an incidental effect on lending under § 560.2(c).  *Id*. at 1006.[6]   The Ninth Circuit

affirmed the district court's dismissal on preemption grounds.  *Id*. at 1008.

In *Casey*, the Eighth Circuit found claims that lenders violated the Missouri

Merchandising Practices Act by charging fees for preparation of documents by nonlawyers were

preempted by HOLA under § 560.2(b)(5).  Section 560.2 provides that laws that are preempted

include "state laws purporting to impose requirements" regarding "[l]oan-related fees."  12 C.F.R.

§ 560.2(b)(5).  The plaintiff homeowners in *Casey* interpreted the phrase "state laws purporting to

impose requirements" to mean state laws that *on their face* impose requirements on lenders.  *Casey*,

583 F.3d at 593.  Because the Missouri Merchandising Practices Act was a law of general application

that did not on its face impose requirements on lenders, the homeowners reasoned that the statute

was not preempted by HOLA.

In contrast, the lenders viewed the phrase "state laws purporting to impose

requirements" to mean state laws that *as applied* imposed requirements on lenders.  *Id*. at 595.

Because OTS had previously used an "as applied" analysis to determine whether a state law was

preempted, and because an agency's interpretation of its own regulation is owed deference, the

Eighth Circuit concluded that "a state law that either on its face or as applied imposes requirements

regarding the examples listed in § 560.2(b) is preempted."  *Id*. (citing *Auer v. Robbins*, 519 U.S. 452,

461 (1997) (agency's interpretation of its own regulation is entitled to deference)).  Even though the

_____

[6] Thus, *Silvas* followed the steps set forth in 61 Fed. Reg. 50951-01 and ended its analysis without making a determination of whether the state law had only an "incidental effect" effect on lending under § 560.2(c).  In *dicta*, the court noted that if it did reach the issue, the same result would follow.  *Silvas*, 514 F.3d at 1007 n.3.  The court explained that when federal law preempts a field, it leaves no room for supplementation by state law.  *Id*.

Missouri Merchandising Practices Act was a law of general application, as applied to the homeowners' claims against their lenders, the state statute would impose requirements regarding loan-related fees such as the document preparation fee. Accordingly, the Eighth Circuit found that HOLA preempted the statute and affirmed the district court's dismissal of the claims. 583 F.3d at 596.

In a case strikingly similar to this one, a federal court in this district followed *Silvas* and found contract and tort claims against the same lenders on the same type of loan to be preempted. In *Bopp v. Wells Fargo Bank, N.A.*, 740 F. Supp. 2d 12 (D.D.C. 2010), the plaintiff brought suit against World Savings Bank and its successors in interest, Wachovia Mortgage, and Wells Fargo Bank, on a Pick-a-Payment mortgage. In addition to claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638, Mr. Bopp asserted claims for common law fraud and breach of the covenant of good faith and fair dealing. Like Mr. Davis, Mr. Bopp complained that the lender did not provide sufficient notice that negative amortization would result from his Pick-a-Payment loan. The court rejected Mr. Bopp's claims, explaining:

> First, negative amortization was *not* certain to occur. It resulted because of the payment option that Bopp himself chose. Second, the [deferred interest disclosure] clearly and conspicuously disclose[d] that negative amortization *would* in fact occur if Bopp chose to make a payment less than the interest owed on the loan.

740 F. Supp. 2d at 16. The court noted that "[i]t is clear that the gravamen of Bopp's state law claims is the same as what underlies his TILA claim. A thorough reading of plaintiff's Complaint reveals that he is challenging the terms of his credit, the manner in which his loan was amortized, the quality and quantity of information disclosed to him, and the manner in which his mortgage application loan

and origination was processed. All of these complaints are expressly enumerated in HOLA as illustrative examples of preempted state law." *Id*. at 16-17 (citing 12 C.F.R. § 560.2(b)(4), (5), (9)-(11)). The court also found that the plaintiff could not demonstrate that the state law claims had only incidental effect on lending operations under § 560.2(c), that subsection (c) must be interpreted narrowly, and that any doubt should be resolved in favor of preemption. *Id*. at 17. The court concluded that the claims of fraud and breach of the covenant of good faith and fair dealing were preempted by HOLA. *See also Jones-Boyle v. Washington Mutual Bank, FA*, Civ. No. 08-02142JF, 2010 WL 2724287, * 7 (N.D. Cal. July 8, 2010) (following *Silvas*, the court held that claims including fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing were preempted by HOLA).

In contrast, in *Ocwen* the Seventh Circuit held that as a general proposition HOLA does not preempt state common law claims. In that case, the lower court had denied the lenders' motion to dismiss numerous state law claims on HOLA preemption grounds, including claims for fraud and breach of contract. The lenders were permitted an interlocutory appeal. On appeal, the Seventh Circuit was most troubled by the fact that HOLA does not provide a private cause of action.[7] *Ocwen*, 491 F.3d at 643. "Against this background of limited remedial authority, we read [§ 560.2(c)] to mean that OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loans associations of their basic [s]tate common-law-

---

[7] In contrast, a borrower has a private cause of action under TILA and may sue for rescission or statutory penalties if a creditor fails to make certain required disclosures. 15 U.S.C. § 1640(a). However, a one year statute of limitations applies. *Id*. § 1640(e). Mr. Davis filed suit more than one-year after closing on his loan and he did not assert a claim under TILA.

type remedies." *Id.* The court listed two examples of state law claims that would not be preempted:

> [S]uppose an S & L signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract. Or if the mortgagee (or a servicer like Ocwen) fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud.

*Id.* at 643-44.

Even so, the Seventh Circuit recognized that preemption depends on the nature of the claims alleged and examined each of the twenty-two causes of action at issue. The court described the complaint as a "hideous sprawling mess," and found it "difficult and in many instances impossible to ascertain the nature of the charges." *Id.* at 641.[8] The court noted, for example, that the fraud allegation "does not appear to be preempted, though this could depend on the nature of the fraud, which is unexplained." *Id.* at 648. The court concluded that the case was "largely unripe for a determination of preemption," affirmed the lower court's denial of the motion to dismiss and

---

[8] The court commented:

> It would have been better had the defendants deferred their motion [to dismiss], and the district judge his ruling, until either the defendants served contention interrogatories designed to smoke out what exactly the plaintiffs are charging, or better, because quicker and cheaper, the judge told the plaintiffs to specify the acts of the defendants that they are complaining about so that he could decide how much of the complaint was preempted. Still, the defendants can hardly be blamed for wanting to strangle the monster in its crib.

491 F.3d at 641.

remanded. The Seventh Circuit directed that "[o]n remand, the judge must focus on the acts alleged in the complaint, seeking clarification from the plaintiffs where necessary and deciding in accordance with this opinion which [claims] are preempted and which are not." *Id*. at 648.

District courts have reached conflicting conclusions in this area of law. Some follow *Silvas/Casey* and find broad preemption, while others follow *Ocwen* and find no preemption. *See*, e.g., *Dixon v. Wells Fargo Bank, N.A.*, Civ. No. 11-10368-WGY, 2011 WL 2945795, *16 & nn. 9-10 (D. Mass. July 22, 2011) (collecting cases). In some cases, district courts have attempted to dissect the claims. *See, e.g.*, *Thomas v. Onewest Bank, FSB*, No. 10-6234-AA, 2011 WL 867880 (D. Or. Mar. 10, 2011) (fraud claim was preempted and breach of contract claim was not); *but see Down v. Flagstaff Bank, FSB*, Civ. No. 3:10-847, 2011 WL 1326961, *4-6 (E.D. Va. Apr. 4, 2011) (HOLA preempted fraud claim; the alleged fraudulent representations and the loan transaction were "inextricably linked to one another" and could not be dissected by the court).[9]

Mr. Davis points to the statement in *Ocwen* that HOLA "does not deprive persons harmed by the wrongful acts of savings and loans associations of their basic [s]tate common-law-type remedies." *See Ocwen*, 491 F.3d at 643. From this, he summarily concludes that his claims for breach of contract/breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, and negligent misrepresentation are not preempted by HOLA. This is an overly broad interpretation of *Ocwen*. The Seventh Circuit did not hold that HOLA never preempts any

---

[9] When a claim is based on allegations that fall completely outside the loan transaction and its supporting documents, the claim may not be preempted. *See, e.g., Dixon*, 2011 WL 2945795, *15-17 (promissory estoppel claim alleging that lender promised to enter into a loan modification if the borrowers took certain steps was not preempted by HOLA).

common law claim.  As explained above, *Ocwen* pointed out that preemption was dependent upon the precise allegations in support of a claim.

An analysis of preemption in this case must start with the proposition that there is a presumption of preemption here.  *See* 61 Fed. Reg. 50951-01 (any doubt should be resolved in favor of preemption); *Aguayo*, 2011 WL 3250465, *6 (because field preemption applies, there is a presumption of preemption).  Further, a close reading of the Complaint and the Note reveals that all of the common law claims raised are inextricably linked to the loan transaction and the documents related to the loan.[10]  The claims of promissory estoppel, fraud, and negligent misrepresentation are based on the allegation that Defendants fraudulently represented that the loan was fixed-rate when it was really an adjustable rate loan with a negative amortization component "hidden within." Compl. ¶ 23; *see also id*. ¶¶ 38-43, 44-51, 52-60.  The claim of breach of contract/breach of good faith claim is based solely on one sentence of § 3(A) of the Note, which provides "I will pay Principal and Interest by making payments every month."  *See id*. ¶ 28.  Mr. Davis alleges that Defendants breached the loan by "agreeing" that initial monthly payments would be sufficient to pay both the principal and interest owed on the Note and by failing to apply any of the initial monthly payments to principal.  *See id*. ¶ 31.  All of these claims are based on the loan transaction and are grounded in the loan documents.  Because the common law claims cannot be removed from the loan transaction, they are preempted by the federal regulations that govern the loan transaction.  *See Down*, 2011 WL 1326961 at *4-6 (HOLA preempted fraud claim that was inextricably linked to the

---

[10] *See Abhe & Svoboda*, 508 F.3d at 1059 (in deciding a motion to dismiss, a court may consider the facts alleged in the complaint and attached exhibits); Fed. R. Civ. P. 10(c) (written instrument attached to a pleading is part of the pleading).0000000000000000000000000000000

loan transaction).

Moreover, this case is almost identical to *Bopp*, where the court found that HOLA preempted fraud and breach of contract claims. Like Mr. Bopp, Mr. Davis complains that Defendants did not provide sufficient notice that negative amortization could occur. The Note, however, clearly and conspicuously disclosed that negative amortization could occur if Mr. Davis chose to make a payment amounting to less than the interest owed on the loan. The Note expressly set forth a fixed interest rate and also expressly set forth the possibility of negative amortization. Mr. Davis chose to make a minimum payment. The Note explained that the borrower had selected the payment amount and that such payment might not be sufficient to pay the entire amount of interest that was accruing. Note § 3(B). It further warned that if monthly payments did not cover interest charges, such unpaid charges would be added to the principal as Deferred Interest and would accrue interest at the same rate as the principal. *Id*. § 3(E). The Note also set forth the manner in which monthly payments could be increased annually to an amount sufficient to repay principal and interest, including the Deferred Interest. *Id*. § 3(C), (D), (F). Mr. Davis's claims for breach of contract/breach of the covenant of good faith, promissory estoppel, fraud, and negligent misrepresentation all assert that different terms of credit should have been offered and that different disclosures should have been made.

In sum, Mr. Davis is challenging the terms of his credit, the manner in which his loan was amortized, and the quality and quantity of information disclosed to him — all claims that were expressly enumerated in §560.2(b) as illustrative examples of preempted state law. *See* 12 C.F.R. 560.2(b)(4), (9); *Silvas*, 514 F.3d at 1006; *Bopp*, 740 F. Supp. 2d at 16-17. Also, in these

circumstances where the allegations are inextricably linked to the loan transaction, Mr. Davis cannot demonstrate that his claims have only an incidental affect on lending operations. *See Bopp*, 740 F. Supp. 2d at 17. Counts I through IV of the Complaint — the claims for breach of contract/breach of the covenant of good faith, promissory estoppel, fraud, and negligent misrepresentation — will be dismissed as preempted by HOLA.

### B. Failure to State a Claim

Even if the claims were not preempted, they would still be dismissed for failure to state a claim.

### 1. Breach of Contract

Mr. Davis's breach of contract/breach of good faith[11] allegation rests solely on one sentence of § 3(A) of the Note, which provides "I will pay Principal and Interest by making payments every month." *See* Compl. ¶ 28. Mr. Davis alleges that Defendants "agreed" that initial monthly payments would be sufficient to pay both the principal and interest owed on the Note and by failing to apply any of the initial monthly payments to principal. *See* Compl. ¶ 31. Mr. Davis's breach of contract allegation, based on a single sentence of the Note taken out of context, is unreasonable because it is flatly contradicted by the express terms of the Note.

"[O]ne who signs a contract has a duty to read it and is obligated according to its terms." *Paterson v. Reeves*, 304 F.2d 950, 951 (D.C. Cir. 1962); *Watson v. Gold N Diamonds, Inc.*, 736 F. Supp. 2d 266, 269 (D.D.C. 2010). Further, "when the bare allegations of the complaint

---

[11] A claim for breach of the covenant of good faith and fair dealing must arise out of a contract between the parties. *C & E Servs., Inc. v. Ashland, Inc.*, 601 F. Supp. 2d 262, 265 (D.D.C. 2009).

conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail." *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 984 n.1 (D.D.C. 2002) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *see also Thompson v. Ill. Dep't of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

Here, there is only one reasonable interpretation of the Note,[12] and it contradicts Mr. Davis's claim for breach of contract. The Note stated that the minimum payment might not be sufficient to pay the entire amount of interest that was accruing, Note § 3(B); that when monthly payments were not large enough to cover interest, the Deferred Interest would be added to the principal and would accrue interest, *id*. § 3(E); and that monthly payments could be increased annually to an amount sufficient to pay the principal and interest, including the Deferred Interest. *Id*. § 3(C), (D), (F). Mr. Davis's allegation that Defendants breached the loan by "agreeing" that initial monthly payments would be sufficient to pay both the principal and interest owed on the Note and by failing to apply any of the initial monthly payments to principal are contrary to the express terms of the Note. Mr. Davis had a duty to read the Note, and he is bound by its unambiguous terms. Thus, Count I, alleging breach of contract/breach of the covenant of good faith,

---

[12]  Under District of Columbia law, contracts are construed in accord with the intention of the parties insofar as it can be discerned from the text of the instrument. *See Washington Metro. Area Transit Auth. v. Georgetown Univ.*, 347 F.3d 941, 945-46 (D.C. Cir. 2003); *Found. for the Pres. of Historic Georgetown v. Arnold*, 651 A.2d 794, 796 (D.C. 1994). Whether a contract is ambiguous is a question of law for the court. *See Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). A contract is not rendered ambiguous merely because the parties disagree over its proper interpretation. *Id.* Instead, a contract is ambiguous only when it is reasonably and fairly susceptible of different interpretations. *See Morgan v. Am. Univ.*, 534 A.2d 323, 330 (D.C. 1987); *Burbridge v. Howard Univ.*, 302 A.2d 245, 247 (D.C. 1973). The Court finds that the Note is not susceptible to more than one interpretation; it is not ambiguous.

fails to state a claim.

### 2. Promissory Estoppel

Count II, the claim for promissory estoppel, must also be dismissed. Promissory estoppel provides a remedy for the enforcement of a promise where the formal requirements of a contract have not been satisfied. *Vila v. Inter-Am. Inv. Corp*., 570 F.3d 274, 280 (D.C. App. 2009). District of Columbia courts generally prohibit litigants from asserting a claim for promissory estoppel when an express contract governs the parties' conduct. *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2009). Here, the Note and other written mortgage documents govern. Count II will be dismissed.

### 3. Fraud and Negligent Misrepresentation

In order to state a claim for fraud under District of Columbia law, a plaintiff must allege that the defendant made a material misrepresentation, with knowledge of its falsity and with intent to deceive, and that the plaintiff reasonably relied on such misrepresentation resulting in provable damages. *Essroc Cement Corp. v. CTI/D.C., Inc*., 740 F. Supp. 2d 131, 145 (D.D.C. 2010). The elements of a negligent misrepresentation claim are similar except that they do not include the scienter requirements of a fraud claim. *Parr v. Ebrahimian*, 774 F. Supp. 2d 234, 240 (D.D.C. 2011). While reasonable reliance can be a jury issue, dismissal for failure to state a claim is proper when no reasonable person would have relied on the representation. *Burman v. Phoenix Worldwide Indus., Inc*., 384 F. Supp. 2d 316, 329 (D.D.C. 2005) (citing *Alicke v. MCI Comm. Corp*., 111 F.3d 909, 912 (D.C. Cir. 1997)).

Counts III and IV, alleging fraud and negligent misrepresentation, are based on the

claim that although the Note stated on its face that it is fixed-rate, it is really an adjustable rate note with a negative amortization component "hidden within." Compl. ¶ 23. Again, in considering Defendants' motions to dismiss, the Court must consider the Note attached to the complaint. *See Abhe & Svoboda*, 508 F.3d at 1059; Fed. R. Civ. P. 10(c). Because the allegations of the Complaint conflict with the Note, the terms of the Note prevail. *See Fayetteville Investors,*, 936 F.2d at 1465; *Thompson*, 300 F.3d at 754; *Miller*, 224 F. Supp. 2d at 984 n.1.

Contrary to Mr. Davis's allegations, the Note does not "hide" anything. On its face it expressly and clearly provided that the while the interest rate is fixed, the minimum payment might not be sufficient to pay the entire amount of interest accruing, Note § 3(B); that when monthly payments were not large enough to cover interest, Deferred Interest would be added to the principal and would accrue interest, *id*. § 3(E); and that monthly payments would be increased annually to an amount sufficient to pay the principal and interest, including the Deferred Interest. *Id*. § 3(C), (D), (F). In light of the terms of the Note, Mr. Davis fails to allege a fraudulent or negligent misrepresentation and fails to allege reasonable reliance. Because the claims for fraud and negligent misrepresentation are flatly contradicted by the express terms of the Note, they fail to state a claim. Counts III and IV of the Complaint will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss filed by World Savings Bank, FSB [Dkt. #6] and the motion to dismiss filed by Wachovia Mortgage Corporation and Wells Fargo Bank N.A. [Dkt. #7] will be granted. The Complaint will be dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date: August 29, 2011 _____/s/_____
ROSEMARY M. COLLYER
United States District Judge